## Henry M. Stewart v. The State.

### No. 726. Decided October 19, 1910.

### 1.—Fraudulent Disposition of Mortgaged Property—Indictment—Trustee.

Where, upon trial of fraudulently disposing of mortgaged property, the indictment alleged, after describing the mortgage, etc., that the defendant unlawfully and fraudulently sold said property and disposed of the same with the intent to defraud the said O. E. Faubion, the legal owner and holder of said mortgage, and that the said mortgage was still valid and subsisting at the time of said sale, the indictment was sufficient, and an objection that it should have alleged for whom Faubion was trustee was untenable.

### 2.—Same—Relation and Understanding of Parties—Execution of Mortgage.

Where, upon trial of unlawfully and fraudulently disposing of mortgaged property, the defendant relied upon a certain understanding made before the execution of the mortgage but did not show that there was an express contract made subsequently to said mortgage which altered or set aside the same. Held,

that the mortgage must be considered as the termination or adjustment of the relations existing between the parties, and controls.

### 3.—Same—Charge of Court—Good Faith—Mistake.

Where, upon trial of the fraudulent disposition of mortgaged property, the defendant claimed that he was simply holding the alleged property for the mortgagee and others in order to sell the same on commission but the proof showed that he had mortgaged the same as his own property and claimed the same subsequently as such; and the court fully submitted the bona fides of defendant and the question of mistake of ownership, there was no reversible error.

Appeal from the District Court of Williamson. Tried below before the Honorable C. A. Wilcox.

Appeal from a conviction of fraudulent disposition of mortgaged property; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—Appellant was convicted in the court below for the fraudulent disposition of mortgaged property and his punishment assessed at confinement in the penitentiary for two years; hence this appeal.

The bill of indictment alleged that the appellant on or about the 2nd day of August,- 1909, executed and delivered to O. E. Faubion a valid lien in writing upon certain personal and moveable property in substance as follows, to wit; then sets out the mortgage in the usual form, stating that in consideration of the sum of $250 paid by O. E. Faubion, the defendant sold and conveyed unto Faubion, trustee or assigns one bay mule about nine years of age and one black mule ten years old; that he warranted the title to said property to said Faubion. That the conveyance was intended as a mortgage and that he was indebted to the said Faubion in the sum of $250 as evidenced by a certain promissory note bearing even date and payable to the order of O. E. Faubion the first day of November, and if the note should be paid at maturity then the obligation should be null and void. The said Faubion as trustee was authorized and empowered in case of failure of payment at maturity to take possession of said property and sell the same for cash at Weir, Texas, after giving notice, etc., and the proceeds to be applied to the payment of the note, interest and cost and the remainder, if any, to be turned over to the said defendant and that the holder of the indebtedness might become the purchaser at said sale, being the highest bidder. This mortgage is in the usual form and the bill of indictment goes ahead and alleges that the defendant unlawfully and fraudulently sold said property and disposed of the same with intent to defraud the said O. E. Faubion and the legal owner and holder of said mortgage, and that the mortgage was still valid and subsisting at the time of the sale. Objection is made to the bill of indictment because it fails to allege ·for whom

Faubion was trustee, it being stated that where a pleading described a party as being a trustee for another, or acting in that kind of fiduciary capacity, the pleader must disclose the beneficiary and for whom he was acting as trustee or agent. In a proper case, it may be stated, that the above is a correct proposition, but in this case it does not state that the indebtedness was held by Faubion as trustee for anyone but simply the mortgage nominates him as the trustee to seize the property and dispose of it in case of a failure to pay and that the title was put in him as trustee for the owner or holder of the note. In other words, he was but the sale agent. It is customary in all mortgages and deeds of trust to name a trustee to whom the property is conveyed and who shall dispose of it. Frequently this trustee named in the mortgage is the holder of the debt. Sometimes another party is substituted, but the debt being transferable and assignable the property must be placed somewhere and in some one's hands and the authority to sell placed somewhere, and this party is generally nominated the trustee or the agent to receive and sell the property and distribute the proceeds in accordance with the nomination in the deed of trust or mortgage. The mortgage on its face discloses the character of trusteeship mentioned and it was not necessary for the pleader to go ahead and allege that Faubion held the debt and that Faubion was trustee for the holder of the debt. We are of opinion that the bill of indictment is not subject to the objection raised in the case.

In the trial of the case J. I. Lister testified that he was in the banking business at Weir, Texas; that he, witness, drew up the note and mortgage in the case and that the note was for $250 and that the note was made payable to O. E. Faubion or order and due November 1, 1909, and also that the defendant executed both the mortgage and the note and he attested them as witness. Both of the instruments were introduced in evidence. The witness further stated that this note had never been paid and the mortgage never satisfied; that he had made search for the property and that it could not be found; that he saw the mules at the time the instrument was executed and they were in the possession of the defendant. This witness further stated that he had a horse and that he turned it over to Stewart to sell with the understanding that the defendant was to have all over $250 that he might get for the horse. The defendant afterwards traded the horse for a pair of mules; that he brought the mules and showed them to him, witness, and told him those were the mules for which he had traded the horse and that he already had a trade by which he expected to sell the mules—in fact had already sold them. After some little time, defendant not having sold the property, nor made any report on it, witness went to see the defendant about the matter and Faubion being dissatisfied also about the mtater, requested him to see the defendant and get the matter in some kind of shape and take security for it. The defendant at the time he traded the horses for

the mules told the witness that he had a man who would take the mules and that he would deliver them in a day or two and would be back and settle for the horse; that he kept putting the witness off by telling him he had not been able to get rid of the mules and about August 2nd witness informed him that Mr. Faubion was not satisfied with the way things were going and that he would have to make him a note for $250 and that he would give him until November 1st to square it off. Then it was that the note was executed and the mortgage given. This is about all the trading that was made between Lister and Stewart. The State also proved that after the execution of this mortgage defendant executed a mortgage on this property to other parties and borrowed money on them, claiming them as his mules and this at a time after the execution of the mortgage to Faubion. Faubion testified that sometime in October he went to see Stewart about the matter when Stewart told him he had the mules in a pasture over east of Elgin, and that if he wanted the mules sold that he should get them up and that there was a mule buyer at Elgin and that he, defendant, would meet him in Elgin on the following Saturday. The witness said he went to Elgin but did not find the defendant there; that he tried to find the pasture in which defendant said the mules were; that he never saw defendant any more until the time of the trial. The witness further says that he never gave his consent for this property to be sold or traded; that he never saw the mules; that Lister attended to the transaction for him and that he had a half interest in the horse. A witness by the name of Hoch testified that he lived at Taylor and that he purchased the two mules on August 15, 1909; that defendant represented the mules as belonging to him and wanted to sell them. This witness says he traded a horse to the defendant and $85 in money for the mules; that he never saw the mules before the time they were traded to him. Breneke testified that he was running a' feed store and wagon yard in Taylor; that the defendant kept the two mules in his wagon yard two months; that the feed bill was due on them; that the defendant said he owned the mules and that he let the defendant have some money on the mules. Sampson Cornell testified that he made diligent search for the defendant after the indictment was returned and could not find the defendant for some time, but afterwards located him in the State of California and brought him back. The defendant testified, in substance, with regard to the trade and the giving of the mortgage as testified to by Lister, and said Lister stated that he would take a mortgage on the mules and that the defendant could go ahead and dispose of them when he got ready and pay Lister the money. He said that at the time he sold the mules he thought he had authority to sell them as they gave him plenty of time to sell the mules, but he wished to satisfy Mr. Faubion; that he did not understand that he was buying the mules but simply was authorized to sell them; that the only interest he thought he had in them was a contingent interest

arising over the sum of $250 which he might sell the mules for. He said he did mention to Mr. Faubion that he had some mules in a pasture near Elgin but they were not these mules. Defendant said he was trading all the time. He further testified on cross-examination that he gave Mr. Ake a mortgage on the mules for the sum of $30. He said that he did not tell Mr. Hoch that there was a mortgage on the mules. He said he did not think he had to tell him as long as he intended to make the mortgage good.

It is contended on the part of appellant that the mortgage executed in this case by the defendant to Faubion did not represent the true condition and relation of the defendant to the property; that the defendant never owned the property, nor never bought it but was simply holding the property to sell for Lister and Faubion and that the mortgage and note was but a colorable transaction and that he held the property under the original transaction between him and Lister and that being part owner of the property he had authority to sell and dispose of it and he could not be held liable for fraudulently disposing of mortgaged property as the property was not sold to him and no title was in him, etc. Whatever may have been the relation of the parties before the execution of the note and mortgage, by all known rules of construction the written instrument will be considered as the termination, or the final judgment of the relation existing between the parties. If defendant held this property under a certain condition that condition would be regarded as having ceased when a new written obligation had been entered into between the parties. The execution of the mortgage and the note in this case changed the relations of the parties with regard to this property from the condition under which the defendant originally acquired the property. The conduct and relation of the parties subsequent to the execution of the mortgage may be looked at and considered in determining the construction to be placed upon the instrument and the relation of the parties thereto, and if it is true that the mortgage was not intended to express the contract existing between the parties, then the defendant would have a right to set this up in this case to defeat it. Nor could the contract be set aside upon an implied agreement or understanding but there must have been an express contract made subsequently in order to set aside and invalidate the note and mortgage given in this case.

In the trial of the case, at the instance of the defendant, the court directed the jury as follows: "If the jury believe defendant was not in fact the owner of the mules in question but had them in his possession for the purpose of selling or trading them for Lister or Faubion and was authorized by Lister or Faubion to sell or trade the same, then the jury should return a verdict of not guilty, and this without reference as to what was done with proceeds of sale, or what representations if any were made by defendant after said mules had been disposed of by him. If the jury believe defendant sold or traded

the mules under an honest though mistaken belief that they were the property of Lister or Faubion and that he (defendant) was authorized by Lister or Faubion to sell or trade them, then defendant should be acquitted and the jury say by their verdict not guilty. If the jury believe from the evidence that at the time the defendant sold or traded the mules to Henry Hoch, if he did sell or trade to said Hoch, he (defendant) did intend to appropriate the proceeds of such sale or trade to his own use, still the defendant would not be guilty of the offense charged in this case, if at the time of such sale or trade, he, the defendant, believed he had the right to sell or trade said mules." These charges were favorable to the defendant and submitted the defendant's theory of the defense in this case in which the court directed the jury that if the defendant was not the owner of the property but held possession for the purpose of selling or trading for Lister and Faubion and was authorized so to do that they would acquit. Further he directed the jury that if the defendant sold or traded the mules under an honest, though mistaken belief that they were the property of Lister and Faubion and that he was authorized to sell them that they would acquit the defendant. The conduct of the defendant subsequent to the execution of the mortgage shows that he considered that his relations to the property had been changed by the execution of this mortgage. He put the mules in a stable at Taylor and told the proprietor they were his; he went to the bank at Taylor and borrowed money on the mules and executed a mortgage and stated to the banker they were his property; he sôld the property and concealed the sale of it from Lister and Faubion; when they went to him to inquire for the mules he had already disposed of them, yet he claimed that he had them in his possession and before the note fell due he left the country and went to California. His conduct subsequent to the execution of the mortgage shows that he understood that his relations to this property had changed by the execution of the mortgage, and there being nothing in the testimony to show that there was an expressed repudiation after the execution of the mortgage of his relations toward this property and nothing to show that the mortgage did not express the true contract between the parties, it would be doing violence to the testimony in this case as well as the law to hold that the State has failed to make out a case and that the defendant's construction should hold as against the facts of the case. We are, therefore, of opinion that the issues were fairly submitted to the jury and that they were directed that if they believed the defendant's construction of the contract to acquit, and that therefore defendant is in no position to complain at the verdict of the jury.

Finding no error in the record the judgment is in all things affirmed.

*Affirmed.*